# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| TERRI NUNN, | Case No.: 2:14-cv-00263-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| CAROLYN. W. COLVIN, Acting Commissioner of Social Security, | |
| Respondent. | |

Pending before this Court is Terri Nunn's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's ("SSA") final decision to deny her claim for Social Security Disability Benefits for lack of disability.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On March 28, 2012, Terri Nunn ("Petitioner") filed a Title II application for a period of disability and disability insurance benefits.  Petitioner also filed a Title XVI application for supplemental security income on March 28, 2012.  In both applications, Petitioner alleged disability beginning February 1, 2010.  These claims were initially denied on June 11, 2012 and, again, on reconsideration on September 5, 2012.  On September 13, 2012, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On November 15, 2013, ALJ Donna L. Walker held a hearing in Spokane, Washington, at which time, Petitioner, represented by attorney Mark B. Jones, appeared and testified.  Impartial medical experts – R.

**MEMORANDUM DECISION AND ORDER - 1**

Thomas McKnight, Jr., Ph.D. and Lynne Jahnke, M.D. – and an impartial vocational expert –
Kimberly Mullinax with Strategic Consulting Services, Inc. – also appeared and testified during
the same November 15, 2013 hearing.

On December 6, 2013, the ALJ issued a Decision denying Petitioner's claims, finding
that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely
requested review from the Appeals Council on December 27, 2013.  On May 13, 2014, the
Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final
decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action,
arguing that "[t]he conclusions and findings of fact of the defendant are not supported by
substantial evidence and are contrary to law and regulation."  Compl., p. 2 (Docket No. 1).
Specifically, Petitioner argues that new and material evidence exists to support her disability and
that such evidence was unavailable to the ALJ at the time of the November 15, 2013 hearing.
*See generally* Pet.'s Brief (Docket No. 17).  Petitioner therefore requests that "the matter should
be remanded to the ALJ for further proceedings."  *Id.* at p. 6.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence
and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981
F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).
Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42
U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual
decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health,
Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

MEMORANDUM DECISION AND ORDER - 2

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that

**MEMORANDUM DECISION AND ORDER - 3**

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

### A.    Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since February 1, 2010, the alleged disability onset date. (AR 14).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

**MEMORANDUM DECISION AND ORDER - 4**

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner had the following severe impairments: (1) obesity, (2) migraine headaches, (3) Meniere's disease, and (4) complaints of neck and back pain.  (AR 14).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  (AR 15).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite

**MEMORANDUM DECISION AND ORDER - 5**

limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's

past relevant work is work performed within the last 15 years or 15 years prior to the date that

disability must be established; also, the work must have lasted long enough for the claimant to

learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b),

404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual

functional capacity to perform light work with the following restrictions: (1) a lifting/carrying

capacity of 20 pounds occasionally and 10 pounds frequently; (2) a standing/walking capacity of

two hours at a time and a sitting capacity of up to six hours total in an eight-hour work day; and

(3) environmental limitations for unprotected heights and moving/hazardous machinery.  (AR

15-18).

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of her impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able

to do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that

Petitioner is capable of performing her past relevant work as a driver, electronic assembler,

receptionist, and customer service (complaints and representative) because, according to the

ALJ, "none of her past work activities required the performance of work-related activities

precluded by [Petitioner's] residual functional capacity.  (AR 18-19).  Although concluding that

Petitioner is capable of performing her past relevant work, the ALJ alternatively determined that

**MEMORANDUM DECISION AND ORDER - 6**

there are other jobs that exist in significant numbers in the national economy that the claimant

can also perform, including telemarketer and assembler.  (AR 19-20).

**B.     Analysis**

      1.     <u>Factual Background</u>

      During the November 15, 2013 hearing, the ALJ indicated that the administrative record

may be incomplete, stating:

| | |
|---|---|
| ALJ: | Counsel, do you have any medical records that would document prescriptions for that because I have zero medical records between February 2010 and April 1 of 2011, and I have one office visit in April of 2011 and then I have no medical records from April 1 of 2011 to May 4 of 2012 when she started at Dirne again.  So from February of 2010 to May of 2011, I have one office visit and I don't have documentation of routine renewals for prescriptions.  And so, if that exists, I would recommend that you supplement the record with that? |
| ATTY: | All right. |
| PET: | I think the 2009 might be incorrect on the Maxalt.  I think I was still taking Imitrex at that time. |
| ALJ: | Go ahead, Counsel. |
| ATTY: | During that time, you've had a chance to look at the records that we've obtained.  Are there records that are missing out there? |
| PET: | Yes, a lot. |
| ATTY: | If and where are they from? |
| ALJ: | Okay, Counsel, honestly, if the records are missing, why don't I have them? |
| ATTY: | Because they are at the same providers that we've requested, Judge. |
| ALJ: | I mean, it's just that it's frustrating for me to come in here and to keep talking about all these gaps that really affect the outcome of the case. |

**MEMORANDUM DECISION AND ORDER - 7**

ATTY:  I understand that but they're also, I believe, the same providers, from talking with Terri, that we requested the records from.

ALJ:  Go ahead. . . . .

ALJ:  All right.  Counsel, I just recommend that you get those records in to supplement the record and I'd also recommend if there is a treating source that would provide a medical source statement or something that would be more beneficial with respect to her limitations, it would really be beneficial as well.

ATTY:  Okay. . . . .

ATTY:  Judge, just so you know, I think we previously have tried to get those records.  The new source we can try to do that, but when we previously tried to get them and we were told they weren't available.

ALJ:  I know how frustrating it can be to try to get records.

(AR 65-66, 77-78).

According to Petitioner, the missing records related to Group Health Cooperative

("Group Health"), claiming that:

> This confusion was caused in part when DDS obtained the records from the same physician (Dr. Dooley) that the Petitioner saw at Group Health, but not the entire record.  (The records of the Petitioner being seen by Dr. Dooley at Group Health in C[oeur d'Alene.)  This was likely not DDS's fault, as at the time of the medical records request, Group Health had closed their Coeur d'Alene Offices, and transferred the records to Spokane, Washington, and apparently only provided some of the records to DDS.

Pet.'s Brief, p. 3 (Docket No. 17).  Petitioner finally located these records and was assured by

Group Health that "they would be immediately sent via facsimile to Counsel."  *Id*. at pp. 3-4.

However, on November 27, 2013, Petitioner's counsel received a "prepay notice" from Group

Health – not the records themselves. *See id*. at p. 4.  That same day, Petitioner's counsel wrote a

letter to the ALJ outlining these circumstances, and indicating:

**MEMORANDUM DECISION AND ORDER - 8**

I know you were quite frustrated that we had been unable to obtain these records prior to the hearing. I am now asking if you want to order these records or if you want my office to obtain them. Each ALJ seems to handle this differently. Please let me know at your earliest convenience. I would also respectfully ask that you hold the record open until the records are received.

(AR 222) (attaching prepay notice).

Apparently without ever responding to Petitioner's counsel's November 27, 2013 letter or receiving the records from Group Health, the ALJ denied Petitioner's claims on December 6, 2013. Petitioner eventually included those records (approximately 374 pages) as part of her December 27, 2013 Request for Review to the Appeals Council. (AR 7, 303). On May 13, 2014, the Appeals Council "concluded that the additional evidence does not provide a basis for changing the [ALJ's] decision." (AR 2).

Through this action, Petitioner "seeks remand based on the fact that new and material evidence was obtained, which was unavailable to the Petitioner at the time the only administrative hearing was held." Pet.'s Brief, p. 4 (Docket No. 17); *see also id.* at p. 6.

2.    Newly-Submitted Evidence: Applicable Law

"Social security claimants usually have one opportunity to prove their disability. If this were not the case, the administrative proceedings would become an unending merry-go-round." *Coulbourn v. Astrue*, 2008 WL 2413169, *8 (E.D. Cal. 2008) (internal quotation marks omitted). However, SSA regulations "permit claimants to submit new and material evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); *see also* 20 C.F.R. §§ 404.970(b), 404.976(b)(1). New evidence is material if it bears "directly and substantially on the matter in dispute." *Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 1984).

**MEMORANDUM DECISION AND ORDER - 9**

Review of the case is warranted only if the Appeals Council finds "that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b).

Where, as here, the Appeals Council considered additional evidence but denied review, the additional evidence becomes part of the record for purposes of the Court's analysis. *See Brewes*, 682 F.3d at 1163 ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."); *accord Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (courts may consider evidence presented for first time to Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"). Remand is necessary where the material evidence gives rise to a "reasonable possibility" that the new evidence might change the outcome of the administrative hearing. *See Borrelli v. Comm'r of Soc. Sec.*, 570 Fed. Appx. 651, 652 (9th Cir. 2014) (citing *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).[1]

     3.    <u>The Supplemented Group Health Records Do Not Render the ALJ's Decision as Lacking in Substantial Evidence</u>

The medical records submitted to the Appeals Council following the November 15, 2013 hearing relate to Petitioner's treatment at Group Health between July 2003 and October 2012.

---

[1] Claimants need not show good cause before submitting new evidence to the Appeals Council. *See Brewes*, 682 F.3d at 1162; *see also Brent v. Astrue*, 2010 WL 3521788, *5 (C.D. Cal. 2010) ("While Section 404.970(b) dictates the proper procedure for the Appeals Council to follow in deciding whether to review a case in light of the submission of new evidence, Section 405(g) – which, unlike the aforementioned regulation, requires a showing of 'good cause' for the belated submission of new evidence – governs 'judicial review' of new evidence *submitted for the first time to the district court*. This Court will not superimpose the 'good cause' requirement of Section 405(g) onto the Appeals Council's review of new evidence pursuant to Section 404.970(b).") (emphasis in original, internal citations omitted)).

**MEMORANDUM DECISION AND ORDER - 10**

(AR 384-757); Pet.'s Brief, p. 4 (Docket No. 17).  Much of this evidence pre-dates Petitioner's alleged February 1, 2010 onset date and is therefore of limited utility.  *See Anderson v.* Colvin, 2015 WL 3529655, *3 (C.D. Cal. 2015) ("Plaintiff's 'new' evidence is remote.  All of the 'new' evidence substantially predates the relevant time period.  'Medical opinions that predate the alleged onset of disability are of limited relevance.') (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1165 (9th Cir. 2008)).  As to those medical records during the relevant period, Petitioner argues:

> Obviously the records during the relevant period are also important.  As an example, records from April 2011 demonstrate that Petitioner had a body mass index (BMI) of 48.73 which would place her in the morbidly obese category.  (AR 559).  The new records also provide a laundry list of ongoing medical conditions which substantiate her complaints and fill in the missing periods where records were not previously obtained.  From counsel's perspective, it is the continued treatment for migraine headaches which are noted as occurring multiple times monthly, which are really important.  (AR 561).  Counsel believes that the Petitioner's migraines are at listing level.  One note dated May 2, 2011 indicates that the Petitioner continues to have migraine headaches and that she uses "all nine of her Maxalt every month" for her migraines.  Has had migraine since she was a teenager.  Notriptyline gives her nightmares.  (AR 573).  The new records also demonstrate the difficulty the petitioner was experiencing with obtaining and maintaining her health care, due to lack of insurance and other financial resources.  (AR 579).

Pet.'s Brief, p. 5 (Docket No. 17).  This is Petitioner's *entire* argument as to why it is "reasonably possible" that the supplemental Group Health records would have changed the ALJ's finding that Petitioner was not disabled under the Social Security Act.  *See also generally* Pet.'s Reply. Brief (Docket No. 19) (stating only that "[t]hese records provide a linear, logical record of the Petitioner's ongoing health issues.").  The undersigned is less convinced.

    First, as Petitioner accurately points out, the April 1, 2011 Group Health treatment note indicates that she was 5'6" tall, weighed 301 pounds, and had a body mass index of 48.74 kg/m$^2$. (AR 559).  But this wasn't unknown to the ALJ at the time of the November 15, 2013 hearing;

**MEMORANDUM DECISION AND ORDER - 11**

indeed, the records actually before the ALJ similarly showed that Petitioner stood 5'6" tall, weighed 301 pounds, and had a body mass index of 48.71 kg/m$^2$. (AR 304). In other words, there was nothing "new" about this evidence – it merely mirrored what was already before the ALJ. To be sure, in concluding Petitioner's obesity to be a "severe impairment," the ALJ acknowledged that Petitioner "reported and the record establishes that she is 5'6" and has been between 285 and 300 pounds, which denotes obesity . . . . with a body mass index of greater than 40." (AR 14-16). In short, this medical evidence would not have altered the ALJ's Decision.

Second, Petitioner's unadorned statement that "[t]he new records . . . provide a laundry list of ongoing medical conditions which substantiate her complaints and fill in the missing periods where records were not previously obtained," does not, by itself, warrant remand. Pet.'s Brief, p. 5 (Docket No. 17). To this end, Petitioner has not particularly identified which of her "ongoing medical conditions" are substantiated and documented in these new records generally, or how such documentation possibly alters the ALJ's existing decision specifically. Moreover, while the existence of the additional medical evidence contradicts the ALJ's statement that "[Petitioner] actually only sought treatment once in 2010 and once in 2011, and four times in 2012" (AR 18), that contradiction, standing alone, is not enough to undermine the ALJ's conclusions, particularly when considering the Court's own independent review of this evidence (from Petitioner's alleged February 1, 2010 onset date onward). That review reveals – as the ALJ nonetheless surmised (AR 18) – that the majority of the temporally-relevant medical records within supplemented Group Health records deal with prescription re-fill requests, along with other similarly-innocuous events like coughs, fevers, upper respiratory infections, heartburn, lab results, breast lump/cellulitis, headaches, lesions, and medication expenses. (AR 384-757). These notes acknowledge Petitioner's stress/anxiety and weight issues, but in an historical

**MEMORANDUM DECISION AND ORDER - 12**

context only; they do not in any way additionally inform, in a substantively different way, the lynchpin issue of Petitioner's functional limitations or alleged disabilities.[2]   Accordingly, these notes do not raise a reasonably probability of a different determination by the ALJ.

Third, Petitioner's comment that "it is the continued treatment for migraine headaches which are noted as occurring multiple times monthly [that is] really important," is similarly lacking.  Pet.'s Brief, p. 5 (Docket No. 17).  Again, none of this information is new.  (AR 16) (ALJ noting that, in April 2011, "in regard to her migraines, [Petitioner] always used nine tablets/maxalt monthly."); *see also* (AR 335 & 347) (records before ALJ indicating Petitioner's history of migraine headaches since childhood).[3]   Petitioner's and/or her counsel's subjective belief that her "migraines are at [a] [L]isting level" does not make it so.  Pet.'s Brief, p. 5 (Docket No. 17) ("Counsel believes that the [P]etitioner's migraines are at [a] [L]isting level.").  Not only does Petitioner not reference any potentially-applicable Listing, she fails to demonstrate how she satisfies any of the requirements set forth therein.  "In the absence of any substantive or meaningful analysis, Petitioner's assertions are undeveloped and wholly inadequate."  *Gump v. Colvin*, 2015 WL 5123708, *3 (W.D. Pa. 2015) (citing *Pennsylvania v. U.S. Dept. of Health & Human Servs.*, 101 F.3d 939, 945 (3rd Cir. 1996) (conclusory assertions, unaccompanied by substantial argument, will not suffice to bring issue before court)).  Petitioner bears the burden of proving that she meets the criteria set forth in any Listing.  *Gump*, 2015 WL

---

[2]   While not dispositive of any issue here, this additional evidence indicated that, on June 28, 2011, Petitioner apparently secured a "part time job" (AR 578), and, on April 27, 2012, Petitioner was "looking for a job" (AR 581).

[3]   Petitioner cites to an April 1, 2011 treatment note discussing her use of maxalt tablets every month; however this treatment note is identical to a treatment note already incorporated within the record before the ALJ.  *See* Pet.'s Brief, p. 5 (Docket No. 17); *compare* (AR 561), *with* (AR 305).

**MEMORANDUM DECISION AND ORDER - 13**

5123708 at *3 (citing 20 C.F.R. § 404.1512(a)); *see also* (AR 15) (ALJ stating: "Likewise, despite reports of Meniere's disease, the claimant does not meet or equal any of the severity criteria under the [L]istings of 2.00 for special senses and speech *or 11.00 for the neurological system*.") (emphasis added).[4]  In short, Petitioner's arguments in these respects simply recite evidence already considered and found not to be demonstrative by the ALJ in terms of showing that her condition represented a covered disability under the Social Security Act.

Finally, the supplemented Group Health records do not demonstrate for the first time (as Petitioner suggests in her briefing) "the difficulty [she] was experiencing with obtaining and maintaining her health care, due to lack of insurance and other financial resources."  Pet.'s Brief, p. 5 (Docket No. 17) (citing (AR 579)).  Again, the ALJ was aware of this fact.  *See* (AR 17) (ALJ acknowledging that Petitioner "testified that she lost her insurance after quitting her job in 2009 and therefore, was unable to pursue treatment and medication.").  As such, this *new* information would not have affected the ALJ's disability determination.

With all this in mind, the Court finds, after considering the expanded record as a whole, there is not a reasonable probability that the additional evidence would have made a difference to the ALJ's finding that Petitioner did not have a severe impairment.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d

---

[4]  Additionally, Petitioner references the fact that she "h]as had migraine[s] since she was a teenager."  Pet.'s Brief, p. 5 (Docket No. 17) (citing (AR 573)).  This does not operate to unwind the ALJ's decision when such a statement can be interpreted as consistent with the ALJ's disability determination – that is, Petitioner has suffered migraines during a period (pre-alleged onset date) where she effectively admits she was not disabled.

**MEMORANDUM DECISION AND ORDER - 14**

at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 f.2d at 1549.

The evidence upon which the ALJ relied – coupled with the additional evidence submitted post-hearing – can reasonably and rationally support the ALJ's well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 25, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 15**